**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
:
PATRICIA COCHRAN,               :       CIVIL ACTION
                                    :
                 Plaintiff,      :
                                    :
                v.             :      No.  14-2165
                                    :
TYSHWAN JACKSON,           :
                                    :
                   Defendant.   :
_____:

**<u>MEMORANDUM</u>**

**ROBERT F. KELLY, Sr. J.**                                       **AUGUST 31, 2015**

       Presently before this court is Plaintiff, Patricia Cochran's, "Motion for a New Trial Pursuant to F.R.C.P. 59," and Defendant, Tyshwan Jackson's, "Response in Opposition to Plaintiff's Motion for a New Trial."  For the reasons set forth below, Plaintiff's Motion is denied.

**I.**      **<u>BACKGROUND</u>**

       The proceedings before this court are the result of an automobile accident involving Plaintiff, Patricia Cochran ("Plaintiff"), and Defendant, Tyshwan Jackson ("Defendant"). Compl. ¶ 5.  In the Complaint, Plaintiff alleges that on October 2, 2012, while traveling by vehicle near City Line Avenue, a vehicle driven by Defendant suddenly and without warning entered Plaintiff's lane and collided with her vehicle.  <u>Id.</u>  As a result of the collision, Plaintiff asserts that she suffered serious injuries.  <u>Id.</u>

       Plaintiff filed suit against Defendant in the United States District Court for the Eastern District of Pennsylvania on April 14, 2014.  <u>See</u> Compl.  Jurisdiction in this case is proper under diversity of citizenship as Plaintiff seeks sums in excess of $75,000, and the parties are citizens

of different states.[1]  28 U.S.C. § 1332; see also Id. ¶¶ 1-2.  Plaintiff's suit alleges one count of

negligence, and seeks sums in excess of $75,000.  Id. ¶ 7.  Defendant filed an Answer with

affirmative defenses to Plaintiff's Complaint on June 3, 2014.  (See Def.'s Answer.)

      The case was referred to arbitration on February 3, 2015.  (Doc. No. 10.)  An arbitration

hearing was conducted.  (Doc. No. 11.)  Defendant, subsequently, filed a Notice of Appeal of the

Arbitration Award and Demand for Trial De Novo with this Court.  (See Doc. No. 12.)  A jury

trial was held from July 13, 2015, through July 15, 2015.[2]  The jury returned a verdict in favor of

Defendant finding that he was not negligent.  A jury poll was conducted and the verdict was

recorded on July 15, 2015.  N.T. 7/15/2015, p. 20-22.  On August 5, 2015, Plaintiff filed the

Motion for a New Trial, and Defendant filed his Response in Opposition on August 17, 2015.

(Doc. Nos. 32, 33.)

## II.   <u>DISCUSSION</u>

      Plaintiff filed a motion under Rule 59 for a new trial arguing that the jury's verdict was

against the weight of the evidence.  (See Pl.'s Mot. for New Trial.)   "The court may, on motion,

grant a new trial on all or some of the issues - and to any party . . . after a jury trial, for any

reason for which a new trial has heretofore been granted in an action at law in federal court."

Fed. R. Civ. P. 59(a)(1)(A).  "New trials because the verdict is against the weight of the evidence

are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice

or where the verdict, on the record, cries out to be overturned or shocks our conscience."

<u>Williamson v. Consol. Rail Corp.</u>, 926 F.2d 1344, 1353 (3d Cir. 1991); see also <u>Klein v.</u>

---

[1] Plaintiff is a resident of Philadelphia, Pennsylvania, and Defendant is a resident of Mount Laurel, New Jersey. Compl. ¶¶ 1-2.

[2] Plaintiff filed a Motion in Limine seeking to preclude the expert report and testimony of Ryan K. Lee, M.D., who was Defendant's expert witness.  (See Pl.'s Mot. in Limine.)  Plaintiff's Motion was denied; however, neither the Motion nor the court's ruling are relevant to the instant Motion.  (Mem. Op. and Order dated June 8, 2015.)

<u>Hollings</u>, 992 F.2d 1285, 1290 (3d Cir. 1993).  Plaintiff argues that the testimonial and documentary evidence presented during trial established that Defendant was negligent.  (Pl.'s Mem. Law Support Mot. for New Trial at 5-8.)  Plaintiff asserts that "there is <u>no</u> basis for the jury to have determined that Defendant Jackson was not negligent."  (<u>Id.</u> at 5.)

Regarding the testimonial evidence, Plaintiff asserts that all three of the fact witnesses, Plaintiff, Defendant, and Police Officer Carl Harper ("Officer Harper"), uniformly described how the accident occurred.[3]  (<u>Id.</u>)  Acknowledging that Officer Harper did not witness the accident, Plaintiff relies heavily upon his testimony asserting that he "confirmed that his investigation revealed that [Defendant] had been travelling in the right lane and changed lanes into the left lane causing the accident."  (<u>Id.</u>)  Plaintiff points out that Officer Harper arrived at his conclusion after examining the property damage to the two vehicles involved in the accident and assessing the location where he found Defendant's broken front light on the roadway.  (<u>Id.</u>)  Additionally, Plaintiff asserts that Officer Harper would have known exactly where the accident occurred because Defendant testified that he did not move his vehicle before the police arrived at the scene of the accident.  (<u>Id.</u>)  According to Plaintiff, "[t]he property damage to both of the vehicles involved in the collision corroborated how the accident occurred, i.e., [Defendant] leaving the right lane to enter the left lane and colliding with [Plaintiff's] vehicle that was already occupying that lane."  (<u>Id.</u> at 6.)

Additionally, Plaintiff asserts that Defendant's testimony confirms that he was negligent by stating that he had exited off the wrong exit, was late for his first day of work, was unfamiliar

---

[3]Plaintiff testified that she was driving and felt the impact, but did not how the accident occurred.  N.T. 7/05/2015, p. 44, lines 24-25; p. 45, line 1.

with the roadway, and was lost.[4]  (Id.)  Plaintiff draws attention to Defendant's testimony that he last saw Plaintiff when she was behind him and he did not see her vehicle when it was occupying the left lane immediately to his left.  (Id.)  She further focuses on Defendant's testimony that he was intending to change lanes and moved his vehicle out of the right lane and into the left lane when the accident occurred.  (Id.)

Plaintiff argues that the jury could not have properly assumed that she was speeding or improperly passing Defendant because there was no evidence of the speed of either vehicle or that Defendant had his turn signal on when he attempted to change lanes.  (Id.)  Moreover, Plaintiff asserts that the fact that she may have been behind Defendant and then to his left when the accident occurred does not diminish the fact that Defendant moved his vehicle from the right lane of travel and entered her left lane of travel.  (Id.)  Plaintiff states "[t]here is simply no evidence that would exonerate [Defendant] for negligently causing this accident."  (Id.)

Defendant counters Plaintiff's argument by stating that "there was conflicting evidence presented to the jury on negligence, and the jury simply performed its functions of determining witness credibility, giving weight to testimony and applying their common sense to the evidence."  (Def.'s Response Opp'n Pl.'s Mot. for New Trial at 5.)  Defendant goes on to state that there is a significant amount of testimonial evidence supporting the jury's finding that Defendant was not negligent, including, "1) Officer Harper acknowledging that the accident could have occurred when the Plaintiff attempted to pass the Defendant while the Defendant was merging left, as reported at the scene by Defendant; 2) the Defendant seeing the Plaintiff behind

---

[4] Defendant acknowledges that he was late running late for work, but points out that he was not in a rush because he had informed his boss about the circumstances.  (Def.'s Response Opp'n Pl.'s Mot. for New Trial at 2) (citing N.T. 7/14/2015, p. 26, lines 6-13.)

him before he merged left; and 3) the Defendant testifying that he moved to the left before the roadway became two lanes." (Id.)

Regarding the location where the accident occurred, Defendant points out that he unequivocally disagreed with Officer Harper's contention that it occurred where the roadway was marked as two lanes. (Id.) (citing N.T. 7/14/2015, p. 30, lines 11-13.) Furthermore, Defendant argues that the jury had sufficient reason to disregard Plaintiff's liability witnesses and find his testimony to be credible. (Id.) Defendant points out that Officer Harper was not present when the accident occurred and had no recollection of it other than reviewing his three year old report. (Id.) Focusing on Plaintiff, Defendant stresses that she did not know how the accident happened and was cross-examined on at least four separate occasions with inconsistent testimony. (Id. at 6) (citing N.T. 7/14/2015, p. 67-68, 68-69, 85-86, 86-87). Defendant points out that he was never cross-examined with prior inconsistent statements. (Id.) Thus, according to Defendant, the jury chose to believe, for good reason and in accordance with the Court's charge, his testimony that the accident occurred on a one lane road when Plaintiff attempted to pass him on the left. (Id.)

Based upon the testimony elicited at trial, as well as the arguments by both parties, we find that the jury could reasonably have concluded that Defendant was not negligent. The testimony regarding how the accident occurred was not uniform as Plaintiff argues. Plaintiff relies heavily upon Officer Harper's testimony even though he did not witness the accident. She argues that Officer Harper's testimony establishes that Defendant was negligent by travelling in the right lane and changing lanes into the left lane causing the accident. During direct examination the following exchange between Plaintiff's counsel and Officer Harper supports Plaintiff's contention:

Q       So, according to your report, Mr. Jackson was in the right-hand side, the right-hand lane of the two marked lanes.  And Ms. Cochran was in the left-hand lane of the two marked lanes?

A       Yes.

Q       And then Mr. Jackson attempted to take his vehicle out of the right-hand lane into the left-hand lane?

A       Yes.

Q       And then that's how the accident happened?

A       Correct.

Q       Officer, as part of your normal routine, do you look at the damage that's done to both vehicles?

--------------------------------------------------------------------------

A       Yes.

Q       And did you do that in this case?

A       I did.

Q       Did the damage that you saw to both vehicles corroborate what you believed to be the case?

A       They did.

N.T. 7/14/2015, p. 17, lines 14-25; p. 18, lines 1-6.  However, on cross-examination, Officer

Harper conceded that the accident could have been caused by Plaintiff attempting to pass

Defendant.  Specifically, the pertinent exchange between defense counsel and Officer Harper is

as follows:

Q       All right and going back to the actual roadway, there is a portion of the roadway near where this accident happened, where there's no dividing lines, is that right?

A       Yes.

-------------------------------------------------------------------

Q       And that's immediately when they come off the ramp, is that right?

A       Yes.

Q      And then, then the dash lines begin?

A      That's correct.

Q      And it was your determination that the accident happened beyond that area where the dash lines were, is that right?

A      Yes.

Q      And it was your determination that the point of impact was to the passenger side of Ms. Cochran's vehicle and the front driver's side of my client's, is that right?

A      Yes.

Q      And that could be indicative of Ms. Cochran trying to – that's what happened when Ms. Cochran was trying to pass my client, could it not?

A      It's possible.

Q      And that's what my client reported to you at the scene, is that right?

A      Yes.

Id. at p. 22, lines 22-25; p. 23, lines 1-19.  Clearly, Officer Harper's testimony regarding how the accident occurred is not as clear-cut as Plaintiff would have us believe.  In fact, his testimony establishes that Defendant's contention that the accident occurred on a one lane road when Plaintiff attempted to pass him on the left is indeed possible.

Plaintiff attempts to show that Defendant's testimony proves that the accident occurred when he was on the roadway with two lanes and he negligently moved into Plaintiff's lane from the right lane; however, this argument is belied by Defendant's testimony that he saw Plaintiff behind him before he merged left and that he moved to the left before the roadway became two lanes.  Id. at p. 31, lines 8-10, 20-23; p. 32, lines 8-21; p. 34, lines 9-17.  The issue of how the accident occurred, which was never conceded by Defendant, was a factual determination left for the jury to decide.

In addition to the testimonial evidence, Plaintiff argues that the documentary evidence admitted into evidence demonstrated that Defendant was negligent.  (Pl.'s Mem. Law Support

Mot. for New Trial at 6-7.)  Specifically, Plaintiff relies upon Officer Harper's police report stating that "I did find pieces of the broken front signal lens from Unit #1 [Defendant's vehicle]. It was located several yards beyond where the lanes markings start, [sic] indicating Unit #1 [Defendant's vehicle] had moved from his clearly-defined lane and struck Unit #2 [Plaintiff's vehicle]."  (Id.)  Officer Harper testified that the term "beyond" meant the accident occurred where the two lanes were marked left and right.[5]  (Id. at 7.) (citing N.T. 7/14/2015, p. 24.)  She also asserts that the scene and property damage also corroborated Defendant's negligence.  (Id.)

The jury was given a negligence instruction twice, and it found Defendant was not negligent.  The jury deliberated and considered all of the evidence under the negligence instruction.  It was perfectly capable of considering whether the documentary, and testimonial, evidence established Defendant's negligence.  It found that they did not.  The jury was thoroughly instructed regarding the elements of negligence and Plaintiff's burden of proof. There is no evidence that the jury did not follow the instructions or did not consider the issue.  In fact, the jury's only question for the court was requesting, once again, the definition of negligence and negligence per se.  N.T. 7/15/2015, p. 18, lines 1-22.  The jury was instructed, again, on the definition of negligence by the court.  Id., p. 18-19.  Clearly, the jury seriously deliberated the issue of negligence in this case after hearing the court's charge on negligence twice.  Furthermore, all of the jurors were unanimous in their finding that Defendant was not negligent as evidenced by the jury poll conducted at the conclusion of the trial.  Id., p. 20-22.

---

[5] Regarding the exact location of the accident, Plaintiff notes that Officer Harper determined that Defendant had violated 75 Pa.C.S.A. § 3309, which provides: "Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules . . .  shall apply: (1) Driving within a single lane - A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety."  (Pl.'s Mem. Law Support Mot. for New Trial at 5-6) (citing 75 Pa.C.S.A. § 3309).  Although Officer Harper determined that Defendant had violated the motor vehicle code, the jury was free to find that he did not violate it based upon the evidence presented at trial.  See Thompson v. Austin, 272 F. App'x 188, 192-93 n.6 (3d Cir. 2008).

The jury's decision was reasonable and not against the clear weight of the evidence. The jury's verdict was not a miscarriage of justice and it does not shock this court's conscience. Based on all the evidence presented at trial, we are satisfied that the jury reached a reasoned verdict supported by the evidence. There was evidence supporting a finding that Defendant was negligent; however, the jury chose not to credit that evidence.[6] As the finders of fact, the jury made its determination. Unless the jury's verdict was a miscarriage of justice that shocks the conscience, the court may not substitute its judgment for that of the jury. The jury's verdict in this case was in accord with the great weight of the evidence. It was not a miscarriage of justice and does not cry out to be overturned or shock our conscience. Consequently, the jury's verdict must stand. As such, Plaintiff's Motion for a New Trial Pursuant to F.R.C.P. 59 is denied.

An appropriate Order follows.

---

[6] Focusing on defense counsel's opening and closing arguments, Plaintiff argues that "[c]ounsel herself did not even posit a theory of the accident that would have permitted the jury to decide that [Defendant] was not negligent." (Pl.'s Mem. Law Support Mot. for New Trial at 7.) (Id.) During the trial, defense counsel presented the theory that Plaintiff may have caused the accident by passing Defendant on the left. Also, as part of the jury instructions, the court informed the jurors that they must not consider the opening and closing arguments as evidence. N.T. 7/15/2015, p. 3, lines 11-13. While we have considered defense counsel's opening and closing statements as they pertain to the instant Motion, we conclude that they do now warrant the granting of a new trial when considered in conjunction with Plaintiff's other arguments.